The term vehicle encompasses broadly many devices under any ordinary understanding of that word. Included within its reach are bicycles, trailers, tractors, in addition to the passenger automobile. If this Court concludes that a person can discharge a firearm at any one of those devices within the city limits without posing a serious potential risk of injury to another person, then Mr. Bautista should not have been treated as a career offender under the sentencing guidance. There's no dispute in this case about the methodology involved, about the categorical or modified categorical approach, nor is there any dispute about what the judicially noticeable facts are. The record is clear that the offensive conviction that this Court will be looking at is that. Let me ask you, do we go straight to the modified categorical approach or is this crime a categorical crime? In terms of the modified categorical approach, we went straight to the modified. Technically, in some of the decisions, it would be called the modified categorical approach because we looked at the plea petition and the judgment for any language that narrowed the offensive conviction. In addition, although it's not in the record, Mr. Sheldahl did listen to the transcript of the plea proceeding, and it did not narrow those facts any further for the district. Well, my only just question was, you know, the statute that's involved here, is that categorically a crime of violence? If one looked only at the statute, I would argue that it is not. It includes shooting at things that I think... That seemed to be the position of the government in their brief. That the government believes... Well, it seemed to be, what I took from the government's brief was that this was not a categorically – this was not a categorical crime of violence. The entire – I don't believe the government was saying that any part of this... No, that's right. I'm just saying... I believe that's correct, Your Honor. Right. So then they went straight to the modified categorical approach, as you did. I believe that's accurate. Or at least focusing only on a vehicle as the target. Right. We weren't addressing the other possibilities that are proposed by the statute. Right. Yes. As I understood the plea hearing, it didn't really narrow the statutory language much at all, right? He just said he agreed he shot at a vehicle. The only change from the statute itself was that Mr. Bautista admitted that he shot a gun – that's a different language – in the direction of instead of at a vehicle. Okay. And he didn't say it was a bow and arrow. He said it was a gun. That's right. But he didn't say if the vehicle was a car or was roller skates or was a bicycle. That's correct, Your Honor. So if you shot at a bicycle laying in an open field within the city limits, would that come within the statute? That would come within the statute, yes. Okay. The government relies on this Court's decision in United States v. Terry Crespo as authority for its position, but Terry Crespo was clearly interpreting a very different part of the statute. It is the exact same Oregon statute, Section 166.220. However, in Terry Crespo, the judicially noticeable facts established that the accused had shot a gun in the direction of a building. And this Court said that when you're shooting at a building within the city limits, that poses a serious potential risk of physical injury. This Court said that primarily in reliance on United States v. Reinhart, which discussed how inhabited dwellings, whether occupied or not, are places that are so closely associated with human traffic that shooting at them does pose that serious potential risk of injury. Mr. Bautista argues that shooting at a vehicle is very different from shooting at a building. As Judge Gould, you just pointed out, vehicles need not be in the places where we expect buildings to be, where human traffic is commonplace. They can be picked up and moved to more remote areas. They can be, Your Honor. Currently, however, they are ordinarily in places that are designed for human traffic. They certainly can be. A lot of people sleep in vehicles today. I'm sorry. People sleep in vehicles all the time. Absolutely. All the time. Our argument is not that there is a specific incident in which that could be a kind of shooting that poses a serious potential risk of injury. You're just saying there could be shootings where it wouldn't pose that risk. Exactly. So under a categorical approach or modified categorical approach here, you don't see that there's always a serious risk of injury. That's correct, Your Honor. Now here's my question on that. Let's assume that there was just a bicycle in a vacant lot. The statute does corral scope. It has to be within the city limits. Someone takes their gun and they empty the chambers into the bicycle in the lot. Maybe it's literally a violation. Why isn't there always some risk of injury to people anywhere within city limits? You know, you could go to shoot what you think is a bicycle in an empty lot. Maybe there's some little kid playing there. I am with you. I think that discharging firearms presents risks anywhere they're shot off. But what we're talking about here is a serious potential risk of physical injury. And we also, I think, can all recognize that many people do, in fact, do target shooting, whether we approve of that or not, and sometimes whether it's lawful or not. But there are circumstances, even within the city limits, that shooting a firearm does not present a serious potential risk of physical injury. If the shooter can, in fact, be sure that or can estimate what's going on, this is an empty field, I'm shooting at some abandoned tractor in the remote part of my lot, I could do that without posing a serious potential risk of physical injury. Are you aware of any cases in Oregon, either at the trial court level that you could point to or court of appeals, where individuals have been prosecuted for shooting a gun at a bike? There is no reported case concerning discharging at a vehicle of any kind. Okay, well, let's take the Supreme Court's, I think the Supreme Court in a case called Duenas. Right. Duenas something, Duenas-Alvarez, said, I thought that we have to look at whether there's a realistic probability, you know, not just a theoretical possibility of how a statute could be interpreted. May I answer that question and reserve some time for rebuttal? We'll give you, it's a hard case, so we're going to give you a little extra time if you need it. Thank you, Your Honor. I think, as I understand Duenas, when the Supreme Court is talking about a State's interpretation of a generic crime, a theft or burglary, as I understand, what the Supreme Court is instructing is, don't be far-fetched in making up examples of what might apply. Point to cases where the State is actually interpreting the statute in that way. That's what I understand Duenas to hold. The Oregon Supreme Court has not interpreted, or the appellate courts have not interpreted this statute when shooting at a vehicle. However, I would point the Court to the State court case that actually counsel cited in his brief, State v. Essig. In that case, which counsel cited for the proposition that the vehicle code definition of vehicle doesn't apply, the Oregon Supreme Court said that the definition of vehicle is quite broad, broader even than the definition in the motor vehicle code, and in that case applied the word vehicle to someone's unauthorized taking of a corporate. So there are examples of the Oregon appellate courts interpreting the word vehicle quite broadly, not meaning something that we ordinarily might say is just a car. Furthermore, as the Court may be aware, the Oregon Supreme Court and the appellate courts, I think, follow one of the most literalist construction of statutes available in the country. Under the case of PGE v. Foley, it's called, the appellate courts construe statutes on the basis of the words that are used. They never go beyond the statutory language unless there is an ambiguity in the statute. So legislative history does not come into the interpretive question, into the interpretive analysis, unless the Court has said something is ambiguous. So if someone discharged a firearm in the direction of a vehicle which is interpreted broadly and a charge was asserted against them, a criminal charge, I take it you're saying that there wouldn't be a big interpretive issue, what was the legislature getting at? It would not be that discussion, no. And the other State court case that counsel cited, State v. Smith, where he and I were exchanging interpretations of whether a skateboard counted under Oregon law, in that case, the Oregon appellate court said that the reckless driving statute didn't apply to skateboards, but it wasn't because they were saying a skateboard isn't a vehicle. They were saying it's because the vehicle code specifically exempts human-powered vehicles. So it's quite literal. I'm confident they would interpret anything. We'd best ---- Let me just ask one question. All right. One question. Suppose he had said at the plea colloquy, I shot a gun in the direction of a car. I believe I would have a much weaker case. You wouldn't be here today, would you? I don't believe I would. It would help if he had mentioned whether it was occupied or not and whether in the direction of a car actually meant it was anywhere close to an occupant. So I think there would still be something to argue about, but it would certainly be a much weaker case. Okay. But if he had said, I shot an arrow into the air, and where it fell, I know not where, that would not be enough under the statute. He would be out of prison right now, I think. Because it has to be in the direction of a building or a vehicle or a person. Or a structure under the statute. Okay. Thank you. Okay. We'll give you two minutes for rebuttal, even though we're already over time. So, Mr. Sheldahl, we won't hold you to your ten minutes. If you need an extra two or three minutes, feel free. I think I can make it in ten, Your Honor. Thank you. If it pleases the Court. Mr. Sheldahl. Mr. Fitzgerald. Mr. Fitzgerald is correct. We all agree that we apply the categorical approach and the modified categorical approach. And we look to the judicially noticeable documents in this case and the elements of the crime. And in this case, the defendant led the elding to intentionally discharging a firearm at a vehicle within the city of Portland. In the direction of a vehicle. In the direction of a vehicle. Correct, Your Honor. My brief contains the note that the city of Portland has over 500,000 inhabitants. And there are two definitions of crimes of violence. There's a lot of cases interpreting those terms. There's what I call the restrictive definition, which you find a lot of cases in the immigration field. It requires a threatened use, attempted use, or use of physical force. Of force. Right. And the second definition, which is a more liberal or broader definition, is the one we have in this case. It contains that clause, but then it adds a phrase, or creates a serious risk of injury. Let's focus on that one for a minute. I agree with, I think, with the sense of Judge Piazza's query. That if he, in his plea colloquy, had said, I shot my gun in the direction of a automobile, this would be an easy case. There often are people in automobiles sleeping or sitting or whatever. But if all his plea establishes is he shot in the definition of a vehicle, and a vehicle could include a bicycle or roller skates, then would the statute, could the statute be applied categorically, or even here, based on his plea, to someone who went out to the corner of an abandoned lot and emptied a gun into, like, a forklift or a bicycle that was sitting in the corner of the lot? Yes, I think the answer is yes. And I think that answer is dictated by this Court's decision in Perry-Crespo, which we cite and rely on. But the assumption, Crespo convicted of the same Oregon statute, shot at a building, and Crespo came here and argued it's not a crime of violence. Nobody established there was anyone in the building. And this Court assumed that was correct, that the building was unoccupied. That was the assumption, which would make your car example, assume the car is unoccupied. And this Court said it creates a risk to others when you shoot at the building, bystanders, neighbors, responding police officers. And I see no distinction between a skateboard, for example, and a building. When you shoot at a skateboard, you create a risk of injury to bystanders, neighbors, responding police officers. Often, I mean, I'm not sure if there is a distinction. But if there is, you know, often people are inside cars or inside buildings. It may not matter if at a particular time they're not. Anytime you shoot at a car or a building, there may be a person in it. But if you shoot at roller skates, you would know there's not a person inside roller skates on the corner of the lot. So I guess then, nor a bicycle. Then, to me, the question is, is it a serious risk of physical injury presented anytime you discharge a firearm in the city limits? Let me read you a clause from Terry Crespo. This Court said, Urban areas are, by definition, more densely populated than rural ones. Accordingly, this serious potential risk of physical injury is inherent in shooting at a building within the city limits and qualifies this particular Oregon statute as a crime of violence. And, Judge Paez, I think that answers your question. In Terry Crespo, this Court considered categorically that this statute was a crime of violence. Well, no. It focused on the house. Yes. But I think he's trying to be If you read that opinion, they went straight to the particular conduct. But it assumed the house was unoccupied. Well, that's right. I mean, you know, you can just say that the statute totally, in every application of that statute, the Oregon statute, is categorically a crime, would involve conduct involving But that you can't say that. So you have to, it looks like, and even your brief goes, passes right over categorical and goes to modified, looks at the particular conduct that's at issue here, shooting at a vehicle, in the direction of a vehicle, and then argues under the catch-all clause. And, you know, the argument has some force. I mean, your argument has some force. But on the other hand, as Judge Gould points out, you know, if you're shooting at a tractor or, you know, something where it's not covered, you know, there's no Well, my argument is that That may not Just having some familiarity with handguns, anything probably beyond 25 yards is very hard to hit with a handgun, and the likelihood is you're going to miss. So you're shooting at a tractor. The likelihood is very substantial you're going to miss. You're going to miss the skateboard. That bullet's going to travel down the street hundreds and hundreds of yards at lethal speed, and who knows what it's going to do. Well, there's also the problem that a bullet could ricochet. Yes. That's also a probability. And I think the State of Oregon has said this is a crime of violence because it is dangerous to shoot firearms within the city limits. I mean, they narrow the statute to urban areas. It's not a crime out in eastern Oregon to shoot a gun at a tractor, but in the city it is. And when we talk about open fields, the only open fields I know in the city are soccer fields, football fields, children's parks. I mean, there aren't corn fields and wheat fields in this city. There aren't too many undeveloped lots left. No, and that's a factor of land use planning here. But in any event, it is my argument that it's inherently dangerous to shoot a firearm in a vehicle, in a skateboard, in a bicycle, in a lot because of the risk of missing and traveling up the street. But we think Judge Sheldahl was correct in making this point. Okay. Thank you very much. Mr. Fitzgerald, we're going to – I said we would give you two minutes of rebuttal if that's what you've got. Responding to Mr. Sheldahl's comments about how shooting a firearm practically anywhere, that means within the city limits, would constitute a crime of violence under the government's definition. But that's not the statute at issue. And the statute at issue, although it does restrict it to city limits, it also says that the shooting has to be at a structure, building, or vehicle within the range of that weapon. And so that actually contradicts that argument. So if someone is being foolish enough to shoot at something that he can't actually hit, and that's the danger that Mr. Sheldahl is anticipating, that also would not be a violation of the statute. If it's out of range, it's not a violation. It may be that the State of Oregon should have been more specific in saying exactly what it is that it's criminalizing, but it said only those – only the things that are enumerated. And as this Court has pointed out in its questions, there are examples when that does not pose a serious potential risk of injury. Because that's the other point. There is always a risk with firearms. The kind of serious potential risk addressed by the guideline is not one that is always present, particularly when this Court considers that the impact on someone like Richard Bautista is the doubling of his otherwise applicable sentence. He is being treated as if that crime were the same as an actual assault with a firearm. The difference is that his guideline range would have been 57 to 71 months without being a career offender. Even with the departure granted by Judge Jones, his sentence was 140 months. So that's where I think the seriousness of the risk should come into play. He would be punished for having committed that crime. It would be in his criminal history, but just not with this level of – this huge ineffect. I wanted to ask the Court if it wanted any sort of letter brief about Duenas since the Court asked that question about the Supreme Court. Well, I didn't have it on my mind, but if either of you would like to send in a letter brief on the significance of Duenas, as one judge, I wouldn't object. After we confer, we'll issue an order if we want letter briefs. If we do, we won't ask for a big deal. Thank you. It can be short. Okay, thanks. Thank you. Okay. We thank Ms. Frichero and Mr. Sheldahl for their excellent arguments, and at this time, a piece that will be submitted.
judges: Gould, Paez, Rawlinson